| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | Case No. 4:10-cr-36 |
| v. ) | |
| ) | |
| ) | *Mattice / Lee* |
| ) | |
| ROBERT WILLIAM REEMSNYDER ) | |

## REPORT AND RECOMMENDATION

Before the Court is Defendant Robert William Reemsnyder's motion to suppress both his statements made during a police interview and all evidence seized during a search of his home on March 11, 2010 [Doc. 17].[1] After considering the evidence and argument, I **RECOMMEND** that Defendant's motion to suppress [Doc. 17] be **DENIED**.

I.  **BACKGROUND**

At the evidentiary hearing, the Government offered the testimony of Federal Bureau of Investigation ("FBI") Special Agent Richard Poff. Defendant offered no testimony. Agent Poff's testimony was not contested in any meaningful way at the hearing and I **FIND** his testimony to be entirely credible.

Agent Poff testified as follows: Around noon on March 11, 2010, Agent Poff and law

---

[1] The motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 18]. The Government filed a "response," which did little more than exclaim, in effect, "liar, liar, pants on fire" as its opposition to the motion [Doc. 21]. After an evidentiary hearing held on February 23, 2011, the parties submitted post-hearing briefs at the request of the Court [Doc. 23 & Doc. 24].

enforcement officers with the Winchester Police Department ("WPD") arrived at Defendant's residence after an undercover task force officer discovered on-line information indicating that a computer located in Defendant's residence contained evidence of child pornography. When Defendant answered the front door, Agent Poff introduced himself and the WPD officers. Defendant invited Agent Poff and two WPD officers into his home, which he shared with his elderly mother. In the living room, Agent Poff explained to Defendant that law enforcement had traced two internet child pornography images to a computer in Defendant's home. Agent Poff told Defendant he was not under arrest and he asked for Defendant's cooperation to determine where he obtained the images and, if possible, to identify the two Asian minors in the images.

Defendant asked what would happen if he did not cooperate. In response, Agent Poff told Defendant it was Defendant's choice to either voluntarily cooperate or the police would pursue obtaining a search warrant. Agent Poff also told Defendant that if law enforcement got a warrant, then the police would not be able to cooperate in a "low key manner" and the search would be a visible activity. Agent Poff also told Defendant his participation in an interview was voluntary. Agent Poff asked Defendant if he understood he was not under arrest and that any cooperation would be voluntary. Defendant said he understood.

When Agent Poff showed Defendant copies of the two child pornography images, Defendant at once recognized the images as ones he downloaded from the internet. Defendant said he did not know the children or take the photographs himself. Defendant admitted viewing child pornography since 2002, admitted downloading some 1000 still images and 400 videos of child pornography from an internet site, and explained that, based on his reading of a Supreme Court case, it was legal for him to view nude images of children so long as the children were not engaged in specific sexual

activities. He also admitted keeping his collection of child pornography on his laptop, external hard drive, and two compact disks located in the residence and he confirmed his screen name was "Asianlover2."

Defendant did not hesitate to provide the above-noted information to Agent Poff; however, he did ask if he would be arrested that day. In response, Agent Poff said that he would take the information obtained during the interview and search, and would present it to an Assistant United States Attorney ("AUSA") who would decide the course of action to be taken. Defendant never told Agent Poff that he understood he would not be prosecuted if he cooperated.

Before a search took place, Agent Poff heard WPD Chief Dennis Young advise Defendant of his right to refuse a consensual search of his residence. Chief Young read a "Computer/Electronic Storage Consent To Search" form and a "Consent to Search" form,[2] out loud to Defendant. In both forms, which Defendant signed, Defendant acknowledged his constitutional right to refuse consent to a warrantless search. Defendant led investigators to the computer equipment in his bedroom after signing the forms. At the hearing, Agent Poff identified WPD officers who were standing by at the WPD in the event Defendant chose not to cooperate, and he testified that the WPD was prepared to seek a search warrant if necessary.

During the relevant time, Agent Poff did not notice any visible signs of duress or stress indicating Defendant's consent or statements were involuntary. During the search, evidence was seized and Defendant was given a receipt for the evidence. Law enforcement then left Defendant's residence with the seized evidence without arresting Defendant.

---

[2] The forms were entered into evidence as Government's Exhibits 1 and 2.

## II. ANALYSIS

Defendant contends both his confession and his consent to search were involuntary for two reasons: (1) Agent Poff threatened to get a search warrant, which Agent Poff said would result in a highly visible and less "low key" search; and (2) Agent Poff implied leniency in exchange for information by telling Defendant he was not under arrest and that law enforcement wanted Defendant's cooperation for just two reasons, (a) to find out where Defendant got the images and (b) to find out whether Defendant could identify the children in the images.

### A. Confession

#### 1. Standards

When a defendant claims his confession was coerced, as here, the government bears the burden of proving by a preponderance of the evidence that the confession was voluntary. *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003); *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999); *United States v. Wrice*, 954 F.2d 406, 410 (6th Cir.1992). The Fifth Amendment privilege against compulsory self-incrimination and the Due Process Clause of the Fourteenth Amendment bar the admission of involuntary confessions. *Ellis v. Booker*, 06-CV-12302, 2008 WL 495479 at *4 (E.D. Mich. Feb. 21, 2008) (citing *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986)).

In assessing whether a confession is made voluntarily, a court must determine, in the totality of the circumstances, whether the confession was the product of the defendant's unconstrained free will. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973). The Court of Appeals for the Sixth Circuit has established three requirements for finding a confession involuntary due to police coercion: (1) the police activity was objectively coercive; (2) the coercion in question was sufficient

to overbear the defendant's will; and (3) the alleged police misconduct was the crucial motivating factor in the defendant's decision to make the statement. *United States v. Mahan*, 190 F.3d at 422; *Johnson*, 351 F.3d at 260.

At the first prong, a court may not find a confession involuntary without a predicate finding of police coercion. *Connelly*, 479 U.S. at 165-67 (explaining that without coercive "state action," a subjective feeling of coercion by the defendant will not render a confession involuntary); *see also United States v. Gatewood*, 230 F.3d 186, 193 (6th Cir. 2000) (the defendant produced no evidence of coercive police conduct; his statements were therefore voluntary); *United States v. Newman*, 889 F.2d 88, 94-95 (6th Cir. 1989) (no coercive conduct by interrogating agents; thus, defendant's mental impairment from alcoholism did not render his statements involuntary). A determination that police activity was objectively coercive is necessary, but not sufficient, to find a suspect's statement involuntary. At the second and third prong, the coercive activity must also have been *sufficient* to overbear the defendant's will and it must *in fact* overbear his will – i.e., it must be the "crucial motivating factor" in the defendant's decision to offer the statement. *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988). Police coercion may be either physical or psychological. *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994); *see also Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985). While the coercive effect of psychological tactics may be "just as real" as the fear of physical torture, there is no coercion when police merely emphasize "the results of ultimately being convicted of the crime." *Ledbetter*, 35 F.3d at 1070.

In determining whether a confession is made voluntarily, a court must consider "the totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation." *Schneckloth*, 412 U.S. at 226; *United States v. Rigsby*, 943 F.2d 631, 635-36 (6th Cir.

1991) (although defendant's education was limited, he understood the nature of the waiver of his rights and his confession was therefore voluntary). Relevant factors include the defendant's age, education, and intelligence; his experience in the criminal justice system; whether the defendant was informed of his constitutional rights; the length and extent of the questioning; and the use, if any, of physical punishment.[3] *Ledbetter*, 35 F.3d at 1067-68.

### 2. Was the Confession Voluntary?

The facts are undisputed. Agent Poff told Defendant that he was not under arrest and that law enforcement wanted Defendant's cooperation for two reasons: (1) to find out where Defendant got the images and (2) to find out whether Defendant could identify the children in the images. Defendant was not detained; rather, he was specifically told that he was not under arrest and he was questioned in his own home. Agent Poff asked for consent to search and said he would seek a search warrant if necessary and that, if the search was conducted pursuant to a warrant, the search would be more visible and less low key. Defendant was not read his Miranda rights.[4] There is absolutely no evidence of punishing physical conduct by law enforcement. The primary issue raised by Defendant is whether Agent Poff's statements to him about the impact of seeking a search warrant and Agent Poff's explanation that he was seeking just two items of information about the images rendered Defendant's confession (or consent) involuntary.

---

[3] Oddly, the Government failed to submit proof regarding the specific characteristics of the Defendant, such as his age, intelligence, or education. While the pretrial service report contains information about matters such as Defendant's age and education, it is prepared for purposes of bail only. Because no proof to the contrary was submitted by either party, I will assume Defendant had no prior experience with the justice system and only average intelligence.

[4] Defendant has not contended there was any violation of his Miranda rights.

### a. Objectively Coercive

I **FIND** Agent Poff's statements to the Defendant, considered separately and together, were not objectively coercive. First, the undisputed facts show that the threat of obtaining a search warrant if Defendant failed to consent was not baseless. "It is well-settled that the agent's statements to the effect that he would obtain a warrant if [defendant] did not consent to the search does not taint [defendant's] consent to a search." *United States v. Salvo*, 133 F.3d 943, 954 (6th Cir 1998); *see also United States v. Blanco*, 844 F.2d 344, 351 (6th Cir. 1987) (consent voluntary even though agent suggested he would attempt to secure a search warrant if suspect refused to sign consent form because that suggestion was neither baseless not pretextual); *United States v. Watson*, 117 F.3d 1421, 1997 WL 377035, *3 (6th Cir. 1997) (Table) ("Notifying a person that a warrant can be obtained does not render consent involuntary unless the threat to obtain the warrant is baseless.").

Second, when Agent Poff indicated that if the search took place pursuant to a warrant and not as a result of Defendant's cooperation, then the search would be highly visible and less low key, he was not making a baseless statement. To the contrary, it appears that at least one officer standing by at the WPD to seek a warrant would have needed to bring any warrant obtained to Defendant's home, adding to the police presence at Defendant's home. Certainly, a search without Defendant's cooperation and direction to the evidence would be more disruptive than a search where Defendant directs the searching officers to the evidence. Truthfully telling Defendant that law enforcement activity would be more visible and less low key if he did not cooperate was not objectively coercive.

Finally, telling Defendant that he was not under arrest and that law enforcement wanted to know (only) two things: where Defendant got the images and whether Defendant could identify the children in the images, is not improper. To be sure, and depending on the totality of the

7

circumstances, coercion may be found where law enforcement makes a promise of leniency if that promise is subsequently broken or illusory when made. *United States v. Stokes*, 631 F.3d 802, 808 (6th Cir. 2011); *Johnson*, 351 F.3d at 262. Here, however, I **FIND** Agent Poff's statements were not an implied promise of leniency.

Even if Defendant inferred a promise of leniency, however, he was not threatened with prosecution if he failed to cooperate. A promise to tell the prosecutor that the defendant cooperated is not in and of itself coercive. And, while even implicit promises of leniency may be objectively coercive in some circumstances, *see US v. Craft*, 495 F.3d 259, 263-64 (6th Cir. 2007), a promise to prosecute if the defendant fails to cooperate is not coercive if the description of the defendant's predicament is accurate. *See Simpson v. Jackson*, 615 F.3d 421, 436 (6th Cir. 2010) ("Though the case may exist in which the ugly truth could be presented in such an overwhelming and combative way that a suspect would lose his free will, [this is not] that case."). While Defendant may have hoped he could avoid prosecution via cooperation, when Defendant asked about whether he would be arrested, he was explicitly told he would not be arrested that day and that any future course of action would be decided by an AUSA.

### b. Overbear Will

Even assuming for the sake of argument that Agent Poff's statements to the Defendant were objectively coercive, I **FIND** they were not sufficient to overbear Defendant's will. The interview of Defendant did not take place over an extended period of time. The questioning was conducted in the comfort of Defendant's own home. Agent Poff's statements were not falsehoods or trickery. In spite of these circumstances, Defendant argues that the threat of embarrassment if the search became highly visible, in conjunction with Defendant's belief that Agent Poff only wanted to know

the identity of the minors and the origination of the images, was enough to override Defendant's will. Defendant has provided no case law supporting this "embarrassment" argument and there is nothing in the record to suggest Defendant was particularly susceptible to embarrassment or even acted embarrassed by his situation.[5]

Even assuming embarrassment alone could override a person's will in some circumstances, Agent Poff's testimony did not indicate he made any particular threat of police action to create embarrassment. He merely truthfully told Defendant the actions that would be taken if he did not cooperate. It appears that Defendant then made a calculated decision to avoid the embarrassment of having his neighbors or mother witness a more visible and extended police activity at his home. It could well be argued that by spelling out the options for Defendant to consider, Agent Poff allowed Defendant an opportunity to make a better-informed choice resulting in the exercise of more free will, not less. That one of the options was less palatable to Defendant did not overbear his free will to make the choice. Here, there is no evidence of undue trickery or misrepresentation. Defendant was simply told the truth, which left him with two undesirable but realistic options, one of which he chose. Simply put, Agent Poff's statements, which pointed out the truthful and perhaps embarrassing consequences of police actions that might be taken, were not sufficient to overbear Defendant's will.

The same reasoning holds true for Agent Poff's explanation of law enforcement's genuine interest in identifying the origination of the images and the minors therein. First, law enforcement has a genuine interest in determining such information. Second, Agent Poff made no explicit

---

[5] For example, there is nothing in the record to indicate Defendant is a celebrity or has community standing that would render potential embarrassment as an overwhelming factor in Defendant's decision to make statements (or give consent).

9

promises to Defendant about cooperation. Third, and although the timeline is not entirely clear, it appears that when Defendant asked about an arrest, Agent Poff explained an AUSA would be making that decision after reviewing the evidence. Simply put, the ugly truth of Defendant's situation was not presented in such an overwhelming and combative way that it was sufficient to overbear Defendant's free will under the totality of the circumstances. *See Simpson*, 615 F.3d at 436.

### c. Crucial Motivating Factor

Finally, again assuming *arguendo* that Agent Poff's statements to the Defendant were objectively coercive and were sufficient to overbear Defendant's will, the undisputed evidence is that Defendant revealed information and justified his possession of a vast collection of child photography based on his own (mis)interpretation of Supreme Court precedent. The evidence presented was that Defendant made statements to justify his behavior and to explain why he thought it was legal. It appears Defendant made a choice to exonerate himself with respect to the production of the images and, in doing so, unwittingly implicated himself for possession of child pornography. However, the Constitution does not exist to deter imprudent decisions by suspects; it protects them only from unreasonable police conduct. *See United States v. Lazar*, 604 F.3d 230, 237-38 (6th Cir. 2010) (explaining that the applicability of the exclusionary rule turns on the culpability of police conduct and the deterrent effect of exclusion); *United States v. Childs*, 2006 WL 3060123, *3 (E.D. Mich. 2006) (holding that the defendant's consent, while "ill-advised," was voluntary). Therefore, I **FIND** Agent Poff's statements were not the crucial motivating factor in Defendant's decision to make his statements.

Accordingly, and based on the totality of the circumstances, I **FIND** Agent Poff's actions and statements were not coercive activity, were not sufficient to overbear Defendant's will, and were

not the crucial motivating factor in his confession. The Government has met its burden to prove by a preponderance of the evidence that Defendant's confession was voluntary.

### B. Consent

#### 1. Standards

The Fourth Amendment prohibits a residential search without a proper warrant except in limited circumstances, such as consent. *Florida v. Royer*, 460 U.S. 491, 497 (1983); *Schneckloth*, 412 U.S. at 219. "It is the Government's burden, by a preponderance of the evidence, to show through clear and positive testimony that valid consent was obtained." *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir 2010) (internal quotation marks omitted). Consent is valid only if it is voluntary – i.e., "unequivocal, specific and intelligently given, [and] uncontaminated by any duress or coercion." *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008). In determining whether a defendant's consent was voluntary, courts consider several factors, such as the characteristics of the accused, including his age, intelligence, and education; whether he understood the right to withhold consent; and whether he understood his constitutional rights. *United States v. Ivy*, 165 F.3d 397, 402 (6th Cir. 1998). Courts also consider the details of the detention, including its length and nature, and the use of coercive or punishing conduct by the police, as well as more subtle forms of coercion that might effect one's judgment. *Id.* at 402; *see also United States v. Crowder*, 62 F.3d 782, 787 (6th Cir. 1995) (considering factors).

#### 2. Was the Consent Voluntary?

For the same reasons that Defendant's confession was voluntary, I **FIND** his consent was voluntary. In addition, Defendant signed two forms expressly stating he was informed of and understood his right to refuse a consensual search. The Government has met its burden, by a

preponderance of the evidence, to show through clear and positive testimony that valid consent was obtained. *See Hinojosa*, 606 F.3d at 881.

### III. CONCLUSION

For the reasons stated above, I **RECOMMEND**[6] that Defendant's motion to suppress [Doc. 17] be **DENIED**.[7]

                                                      s/ *Susan K. Lee*
                                                      SUSAN K. LEE
                                                      UNITED STATES MAGISTRATE JUDGE

---

[6] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

[7] This document contains hyperlinks to other documents. Such links are provided for the user's convenience only, and the Court does not guarantee their functionality or accuracy. Any link which directs the user to a document other than the document cited in the text will not supersede the textual citation. The Court does not endorse the content of, or any provider of, any document maintained by any other public or private organization.